**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| American Federation of State, County and Municipal Employees, AFL-CIO, Local 3190, <br><br> Plaintiff, <br><br> vs. <br><br> Maricopa County Board of Supervisors, et al., <br><br> Defendants. | No. CV 06-2128-PHX-SMM <br><br> **MEMORANDUM OF DECISION AND ORDER** |

This is an action to enjoin the County of Maricopa and Maricopa County Manager David Smith from enforcing two written policies that govern the way in which third parties may engage in "solicitation" of County employees and post information on employee bulletin boards located in County facilities. The Complaint in this matter was filed pursuant to 42 U.S.C. §§ 1983 and 1988 for alleged deprivations of Plaintiff's rights secured by the First and Fourteenth Amendments of the United States Constitution. (Dkt. 1, ¶¶41-47.)

Now pending before the Court is Plaintiff American Federation of State, County and Municipal Employees, AFL-CIO, Local 3190's ("Local 3190") Application for Preliminary Injunction (Dkt. 2) and Defendants Maricopa County Board of Supervisors' (the "Board"), Maricopa County's (the "County"), Maricopa County Manager David Smith's ("Smith"), and Maricopa County Supervisors, Fulton Brock's, Don Stapley's, Andrew Kunasek's, and Max

1  Wilson's Motion to Dismiss Plaintiff's Motion for a Preliminary Injunction and Complaint.[1]

2  (Dkt. 21.)

3      Local 3190 now challenges actions engaged in by only the County and Smith

4  (collectively, "Defendants").   Specifically, the implementation and enforcement of two

5  written policies that regulate "solicitation" and "posting of general notices" in County

6  facilities.[2]   At the hearing, counsel for Local 3190 clarified its request for a preliminary

7  injunction: Local 3190 seeks an injunction to enjoin and restrain "Defendants, their officers,

8  representatives, agents, servants, employees, attorneys and all persons acting in concert or

9  participation with Defendants" from enforcing the County's solicitation and posting policies

10  against Local 3190.  In the alternative, Local 3190 seeks an injunction requiring Defendants

11  to amend the County's solicitation and posting policies.

12      After considering the parties' briefs, evidence presented by Local 3190[3] in the form

13  of declarations and exhibits, and the arguments of counsel at the Preliminary Injunction

14  Hearing held on February 15, 2007, the Court now issues the following ruling on Local

15  3190's Application for Preliminary Injunction.

---

19      [1] The merits of Defendants' Motion to Dismiss Local 3190's Complaint will be
20  addressed in a separate Order.

21      [2] In addition to the solicitation and posting policies, the Local 3190 originally
    challenged a May 17, 2006 Resolution that eliminated certain employee payroll deductions. See
22  dkt. 2 at 4-12. On February 2, 2007, the parties notified the Court that this issue has been
23  settled. See Dkt. 41. Therefore, the constitutionality of the May 17 Resolution is no longer
    before the Court. At oral argument, counsel for Local 3190 reiterated that the dues check-off
24  issue is now moot and the remaining claims are only directed at the County of Maricopa and
    County Manager Smith.  Based on these representations, Counts I, II, and V of Local 3190's
25  Complaint will be dismissed, in addition to the following Defendants: the Maricopa County
    Board of Supervisors, Fulton Brock, Don Stapley, Andrew Kunasek, and Max W. Wilson.

26      [3] Defendants presented no evidence in opposition to Local 3190's Application for
27  Preliminary Injunction.

28                                          - 2 -

# FINDINGS OF FACT

## The Parties

1.    Local 3190 is a private, voluntary, nonprofit labor organization affiliated with the American Federation of State, County and Municipal Employees, AFL-CIO International Union ("AFSCME International"), which is the largest labor organization representing public employees in the United States.

2.    Local 3190 works closely with Public Employees AFSCME Council 97, AFL-CIO ("Council 97"), which is a voluntary, nonprofit labor organization representing state, county and municipal employees throughout the State of Arizona.  (Dkt. 6, ¶8.)

3.    AFSCME International, Council 97, and Local 3190 organize and work for social and economic justice in the workplace through political action and legislative advocacy. (Dkt. 8, ¶8.)

4.    The officers and representatives of Local 3190 frequently meet with supervisory or management employees of the County to discuss wages, hours, and other terms and conditions of employment including, health and safety, employee discipline, grievances, hiring, promotions, demotions, transfers, and work assignments on behalf of both members of Local 3190 and many of the County's non-supervisory employees.  (Id.)

5.    Each of Local 3190, Council 97, and AFSCME International are labor organizations within the meaning of A.R.S. § 23-1301.

6.    Local 3190 encourages all eligible County employees to become members of Local 3190 and to support Local 3190's and its affiliates' political action committee, the "PEOPLE Fund."  (Dkt. 6, ¶10.)

7.    One reason Local 3190's members are politically active is because the hours, wages and working conditions of public employees are generally established through the political process.  (Dkt. 6, ¶¶8-12.)

8.    The County of Maricopa is a political subdivision of the State of Arizona.

9.     Defendant David Smith is the County Manager for Maricopa County, duly appointed and acting as agent for the Board of Supervisors regarding administration and enforcement of various resolutions of the Board of Supervisors and County policies and procedures, including the solicitation and posting policies challenged by Local 3190 in the present case.

**Local 3190's Requests for Access to County Facilities**

10.    In a July 7, 2004 letter, Local 3190 requested permission to access any "County Facility Break Room and/or Lunch Room, for the purpose of handing out informational flyers" ("Break Room Forum"). (Dkt. 8, Ex. 10.) On August 13, 2004, County Manager Smith denied the request by stating, it "will be inappropriate to provide your organization special access to our county lunch & break rooms." (Id.)

11.    On March 9, 2006, Local 3190 requested permission for "immediate access to employee mailboxes so that we may in turn place flyers and membership applications in them." (Id.) Local 3190's letter stated that, on March 3, 2006, the Arizona Probation Officer Association ("AZPOA") placed flyers in employee mailboxes for its picnic and "left flyers in employee mailboxes that on the back of the flyer had a membership application." (Id.)

12.    Representatives of Local 3190 have made numerous written and verbal requests of the County to be provided access to County property, including bulletin boards, employee assigned mailboxes, the Employee Benefits Fair, lunch rooms, break rooms, employee lounges, meeting areas, employee paychecks, employee paycheck envelopes, and other locations where non-work related information and advertisements are displayed (collectively, "County Property"), in order to post, distribute, and make available to interested County employees information about AFSCME International, Council 97, and Local 3190. (Dkt. 6, ¶32.)

13.    Representatives of Local 3190 have made numerous written and verbal requests of the County to be provided access to County Property to post, distribute, and make

available to interested County employees information about how to become members of Local 3190.  (Id.)

14.   Despite numerous written and verbal requests, the County has continuously denied or refused to respond to Local 3190's requests to be provided access to County Property for purposes of communicating Local 3190's mission, purpose, and membership options to interested County employees.  (Id., ¶33.)

**The County's Written Solicitation and Posting Policies**

15.   The County has two written policies, Policy & Procedure No. A1502 and Policy & Procedure No. A1917 (the "Policies"), that purport to regulate "solicitation" "during working hours, in working areas, in all County buildings, facilities and grounds" and the "posting of general notices" on "all County facilities."  Dkt. 8, Ex. 6.

16.   County Policy A1502 regulates solicitation and  provides, in pertinent part:

> **A.  Purpose**
>
> To provide a system in which to *monitor and control the level and type of solicitation that is directed toward county employees to reduce negative impacts and conflicts of interest.*
>
> **B.   Policy**
>
> Soliciting among County employees for any purpose is prohibited *during working hours, in working areas, in all County buildings, facilities and grounds.*  This applies to all solicitations, selling or peddling, and distribution of sales/informational material or propaganda of every nature whether by County employees or other persons not in the employ of the County, unless prior authorization by the County Manager's office or an authorized designee has been obtained.
>
> Solicitors who have not received permission to distribute informational material, including pamphlets, brochures, bulletins, or any other type of material, are *restricted to public places such as sidewalks or parking lots or other facilities that are available for public use.  Solicitors may not place material in employee lounges/break rooms, the cafeteria, or any work area.*
>
> **C.  Definitions**
>
> Soliciting: to make petition to; to approach with a request or plea; to urge to support one's cause.

### D.  Authority and Responsibility

All County employees are responsible for ensuring that *soliciting activities, as described in the policy, do not interfere with the normal and effective completion of work assigned*. If persons outside of the County employ are engaged in unauthorized solicitation, then it is the responsibility of management personnel to advise the solicitor of the procedure for obtaining authorization prior to distributing material or contacting County employees and that they should either terminate their activities or remove themselves from County premises. If the solicitor continues such activities, the manager in charge should notify County security.

The County Manager is authorized to approve items of solicitation to all county employees.  This authority may be delegated to Department Directors as deemed appropriate.

### E.  Procedures

Anyone having *an item of interest to other employees* may request permission from the County Manager's Office or the Department Director (whichever is applicable) for approval to post/distribute information or contact County employees.

1.   The request to solicit should be made 5 days prior to expected posting or distribution of material or contact with employees.

2. The County Manager or Department Director will review all solicitation information and materials.

3.  If the County Manager or Department Director denies the request for solicitation, the requestor will be notified that the items will not be distributed nor may County employees be approached.

4.  If the request is approved, the requestor may distribute or post materials in specified locations or arrange meetings with County employees in accordance with the County Manager's or Department Director's Instructions.

5.    Additionally, custodial personnel will be alert for unauthorized solicitation materials and will discard them immediately.

6.  Repeated violations of this policy should be reported to the County Manager.

Dkt. 8, Ex. 6, County Policy A1502 ("Solicitation Policy"), emphasis added.

17.   County Policy A1917 regulates posting and provides, in pertinent part:

### A.  Purpose

To *restrict indiscriminate posting of notices on County property while ensuring that County employees have an opportunity to view authorized general information notices/flyers*.

### B.  Policy

The County Manager's Office has authorized *"employee" bulletin boards to be hung at various, designated locations in County facilities to provide centralized locations for posting approved notices*. The bulletin boards are to be used for the *sole purpose of posting 'authorized' information such as general notices of interest, value, or help to County employees*. Only those documents which have been approved by the County Manager or the manager responsible for the facility/location are authorized to be displayed. Documents that have not been approved or are not posted on a bulletin board (e.g. on walls, elevators, etc.) are subject to removal. Notices shall not remain on the bulletin board for a period of more than two weeks unless the approving authority grants an extension. A discard date should be noted on the document.

*This policy encompasses all County facilities, both inside and outside*. This policy does not apply to official public notices.

### C.  Authority and Responsibility

The County Manager or facility/location manager are solely authorized to approve the posting of notices on County bulletin boards.

The facility/location managers should designate an employee to maintain respective bulletin boards and be responsible for posting and discarding notices on a weekly basis.

### D.  Procedures

1.  Notice(s) for County-wide distribution should be delivered to the County Manager's office or the facility/location manager's office five days prior to anticipated posting date of notice(s). Notices that are specific to a department, division, or work location should be submitted to the appropriate manager in charge.

2.   Upon submission the notice *will be reviewed for appropriateness and employee or citizen benefit* and a determination will be made if posting will be allowed.

- 7 -

3.  If authorization is denied, then the notices may not be posted on the bulletin board nor on any other structure.  A designated employee will notify the denied party.  If authorization is granted, then the notice(s) will be initialed by the approving authority and the expiration date clearly visible.  A designated employee will then post the notices.

4.  Additionally, custodial personnel will remove all notices from non-designated areas and will inspect all areas of the buildings regularly to ensure that unauthorized notices are removed.

5.  Repeated violations of this policy should be reported to the County Manager or the appropriate facility/location manager.

Dkt. 8, Ex. 6, County Policy A1917 ("Posting Policy"), emphasis added.

18.   Solicitors who do not receive permission to distribute informational material are permitted to engage in solicitation in "public places," such as "sidewalks or parking lots or other facilities that are available for public use."  (Dkt. 8, Ex. 6 at A1502,B.)

19.   Local 3190 has not alleged, nor does it contend, that Defendants have interfered with its attempts to engage in solicitation in any of these "public places."

## The County's Practices

### Materials Posted on Employee Bulletin Boards ("Bulletin Board Forum")

20.   Maricopa County has a number of buildings where County employees regularly report or are assigned in the normal course of their job duties.  Many of these buildings have entry ways and common areas open to the public.  Two such buildings, the Maricopa County Superior Courthouse (the "Courthouse") and adjacent Maricopa County Office Building (the "Office"), are located on West Jefferson Street in downtown Phoenix, Arizona.  (Dkt. 6, ¶28; Dkt. 8, ¶28.)

21.   The hallways and common areas of County buildings are generally open to the public and, like virtually all other County buildings, have lunch rooms, break rooms, cafeterias, rest areas, employee lounges, bulletin boards, or some combination thereof.  (Dkt. 6, ¶28; Dkt. 8, ¶28.)

- 8 -

22. Local 3190 has presented evidence that third parties have posted advertisements, solicitations, and brochures on or adjacent to at least one bulletin board, located in the employee lunch room at the Southeast Court facility in Mesa, Arizona. (Dkt. 8, ¶29.)  Some organizations, such as the Hard Rock Café, Top Spoke Motorcycle Rentals, The Wax Museum at Fisherman's Wharf, a vacation company (www.alladream.com), Disneyland, and the Boyce Thompson Arboretum have posted flyers promoting purely recreational activities. (Id., Ex. 8.) Others have posted materials related to charities, including the United Way.   Other organizations have posted advertisements for services, such as Steve's Mobile Auto Repair, Main Street Financial, Nextel, Danny's Car Wash, and Kayphil Sports and Fitness.   Other postings promote special services, including MariSol Federal Credit Union, Mariflex Flexible Spending Accounts, Legal Connect, Sprint, United Pet Care, Equity Residential, and Liberty Mutual.  (Id.)

**Intranet Connection to Employee Services Management ("Intranet Forum")**

23. County employees are given a user name and password to access the County intranet website from regularly assigned or available computer workstations and from personal computers in employees' homes.  (Dkt. 6, ¶28.)

24. The County's intranet website provides a link under the heading "Employee Services Management Association" ("ESMA").  (Id., ¶31.)

25. Local 3190 has presented evidence that the ESMA link on the County's intranet website connects to ESMA's web page.  ESMA's web page contains information and advertisements from third-parties about discounts available to County employees for life and disability insurance, sporting and entertainment events, theme parks, airline travel, cruises, automobiles, restaurants, and health and fitness. (Dkt. 8, ¶31, Ex. 9.)

**Paycheck Envelopes and Paychecks ("Paycheck Forum")**

26. County employees are paid by checks that are either delivered in pay envelopes or in assigned employee mailboxes. (Dkt. 6, ¶28; Dkt. 8, ¶28.)

27. Local 3190 has presented evidence that third parties have been permitted to solicit County employees by distributing flyers in employee paycheck envelopes or attached to employee paychecks. (Dkt. 8, ¶29.) Paycheck distributions include ads from Disneyland, MariSol Credit Union, vacation travel, and blood drives. (Id.)

**Employee Mailboxes ("Mailbox Forum")**

28. County employees are assigned mailboxes. (Dkt. 6, ¶28.)

29. Local 3190 has presented evidence that the AZPOA has been permitted to solicit County employees by distributing flyers for an AZPOA picnic and AZPOA membership applications in County employee mailboxes. See Dkt. 8, Ex. 10.

**The Employee Benefits Fair ("Benefits Fair Forum")**

30. Local 3190 has presented evidence that the County periodically hosts an "Employee Benefits Fair" to inform employees of the wide range of benefits available to them.

31. The Employee Benefits Fair is held during working hours on County property at various locations. (Dkt. 6, ¶30; Dkt. 8, ¶30.)

32. At the Employee Benefits Fair, third party vendors are permitted to distribute information promoting their services, including dental, vision, health, and life insurance. (Dkt. 8, ¶30.)

## CONCLUSIONS OF LAW

**A. Ripeness**

Defendants contend Local 3190's allegation that the County has applied the Posting Policy in a discriminatory manner is not ripe because Local 3190 "has not identified a single bulletin board that is open to the public or employees at large for posting material." (Dkt. 20 at 13.) Moreover, because Local 3190 "has offered no evidence that the County has forbidden it from posting anything on [such a bulletin board], or that anything the Union has

posted on it has been removed by the County," Defendants urge the Court to avoid Local 3190's claim that they have enforced the Posting Policy in a discriminatory manner. (Id.)

The Court rejects Defendants' ripeness argument. Local 3190 presented evidence that Defendants have repeatedly refused its written and verbal requests to access County Property in order to distribute and post information about the benefits of membership in Local 3190. See Dkt. 6, ¶¶27, 32-33; Dkt. 8, ¶¶27, 32-33, Ex. 10. Thus, this issue is ripe.

**B. Preliminary Injunction Standard**

The purpose of a preliminary injunction is to preserve the status quo among the parties pending a final decision on the merits of the action. See Fed. R. Civ. P. 65; Chalk v. U.S. Dist. Court, 840 F.2d 701, 704 (9th Cir. 1988); Regents of the University of California v. ABC, Inc., 747 F.2d 511, 514 (9th Cir. 1984). Therefore, findings of fact and conclusions of law made in connection with a preliminary injunction are not binding adjudications. The court may come to opposite conclusions at the trial on the merits. See University of Texas v. Camenisch, 451 U.S. 390, 395 (1981). Although Rule 65 establishes the procedural requirements for obtaining a preliminary injunction, the substantive requirements for injunctions are defined by applicable federal case law and statutes.

Courts in the Ninth Circuit have adopted an "alternative standard" for granting a preliminary injunction under which the moving party can meet its burden by demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable harm if relief is not granted, or (2) the existence of serious questions going to the merits of the case and a balance of hardships that tips sharply in the movant's favor. International Jensen v. Metrosound U.S.A., 4 F.3d 819, 822 (9th Cir. 1993). These two formulations "are not separate tests but the outer reaches of 'a single continuum.'" Regents of Univ. of Cal., 747 F.2d at 515 (citation omitted).

1

**C.  Reasonable Probability of Success on the Merits**

2

   **1.        First Amendment**

3

   The First Amendment applies not only to legislative enactments, but also to less

4

formal governmental acts, such as the County Policies and practices at issue here.  See Faith

5

Center Church Evangelistic Ministries v. Glover, 462 F.3d 1194, 1200-02 (9th Cir. 2006)

6

(applying First Amendment analysis to County's library meeting policy prohibiting access

7

for "religious purposes").  Neither party disputes that solicitation and posting information

8

constitute forms of speech protected by the First Amendment.  See Village of Schaumburg

9

v. Citizens for a Better Environment, 444 U.S. 620, 633 (1980); Giebel v. Sylvester, 244

10

F.3d 1182, 1186-87 (9th Cir. 2001).  However, it is well-settled that "the government need

11

not permit all forms of speech on property that it owns and controls."  Int'l Soc'y for

12

Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 678 (1992) ("ISKCON").  Rather, "[t]he

13

existence of a right of access to public property and the standard by which limitations upon

14

such a right must be evaluated differ depending on the character of the property at issue."

15

Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 44 (1983).  The Supreme

16

Court "has adopted a forum analysis as a means of determining when the Government's

17

interest in limiting the use of its property to its intended purpose outweighs the interest of

18

those wishing to use the property for other purposes."  Cornelius v. NAACP Legal Def. &

19

Educ. Fund, Inc., 473 U.S. 788, 800 (1985).  Thus, the Court will set forth this forum

20

analysis and the principles applicable to the six fora at issue here.

21

   **Forum Analysis**

22

   The Supreme Court has recognized several types of forums.  The first is the

23

traditional public forum: "places which by long tradition or by government fiat have been

24

devoted to assembly and debate," such as streets and parks.  Perry, 460 U.S. at 45. In a

25

traditional public forum, "the rights of the State to limit expressive activity are sharply

26

circumscribed"; the state may only enact content-neutral "time, place, and manner"

27

28

1  restrictions or content-based rules that are "necessary to serve a compelling state interest"

2  and "narrowly drawn to achieve that end." Id.

3      A second type of forum – the non-public forum –  consists of "[p]ublic property

4  which is not by tradition or designation a forum for public communication." Id. at 46.  To

5  maintain a non-public forum, the government must employ "selective access" policies,

6  whereby forum participation is governed by "individual, non-ministerial judgments." Ark.

7  Educ. Television Comm'n v. Forbes, 523 U.S. 666, 680 (1998) (Forbes); see also Cornelius,

8  473 U.S. at 804.  The government may be more restrictive in its regulation of speech in a

9  non-public forum than in a traditional public one.  The government may "reserve the [non-

10 public] forum for its intended purposes, communicative or otherwise, as long as the

11 regulation on speech is reasonable and not an effort to suppress expression merely because

12 public officials oppose the speaker's view." Perry, 460 U.S. at 46.

13      A third category lies in between, and is a hybrid of, the other two forums. This type

14 of forum is "created by government designation of a place or channel of communication for

15 use by the public at large for assembly and speech, for use by certain speakers, or for the

16 discussion of certain subjects." Cornelius, 473 U.S. at 802.  The forum may be of either "a

17 limited or unlimited character." ISKCON, 505 U.S. at 678.  The government cannot create

18 such a forum "by inaction or by permitting limited discourse, but only by intentionally

19 opening a nontraditional forum for public discourse." Cornelius, 473 U.S. at 802.  The

20 Supreme Court has sometimes referred to these intermediate forums as "designated public"

21 forums, see, e.g., United States v. Am. Library Ass'n, Inc., 539 U.S. 194, 206 (2003);

22 Forbes, 523 U.S. at 677-79; Lamb's Chapel v. Center Moriches Union Free Sch. Dist., 508

23 U.S. 384, 392 (1993); ISKCON, 505 U.S. at 678, but at other times the Court has used the

24 phrase "limited public" forums to describe this category, see, e.g., Am. Library Ass'n, 539

25 U.S. at 206; Good News Club v. Milford Central School, 533 U.S. 98, 105-06 (2001); Santa

26 Fe Indep. Sch. Dist. v. Doe, 530 U.S. 290, 303-04 (2000); Cornelius, 473 U.S. at 804, 811;

27 Perry, 460 U.S. at 47-48.

28

Although the Supreme Court has never squarely addressed the difference between a designated public forum and a limited public forum, its most recent opinions suggest that there indeed is a distinction.  In a limited public forum, the government creates a channel for a specific or limited type of expression where one did not previously exist.  In such a forum, "the State may be justified 'in reserving [its forum] for certain groups or for the discussion of certain topics,'"subject only to the limitation that its actions must be viewpoint neutral and reasonable.  <u>Good News Club</u>, 533 U.S. at 106-07 (citation omitted).  In a designated public forum, by contrast, the government makes public property (that would not otherwise qualify as a traditional public forum) generally accessible to all speakers.  In such a forum, regulations on speech are "subject to the same limitations as that governing a traditional public forum" – namely, strict scrutiny. <u>ISKCON</u>, 505 U.S. at 678.  The Ninth Circuit has also held that a limited public forum, a forum opened only to certain speakers or for discussion of certain subjects, is in fact a subset of the larger category of designated public forums intentionally opened by the government for "public discourse."  <u>See</u> <u>Hopper v. City of Pasco</u>, 241 F.3d 1067, 1074 (9th Cir. 2001).

To summarize, in a traditional public forum the government may only establish content-neutral "time, place, and manner" restrictions or content-based rules that are "necessary to achieve a compelling state interest" and are "narrowly drawn to achieve that interest."  <u>Perry</u>, 460 U.S. at 45.  A designated public forum is "subject to the same limitations as that governing a traditional public forum."  <u>ISKCON</u>, 505 U.S. at 678.  In a limited public forum, however, the government may restrict access to "certain groups" or to "discussion of certain topics," subject to two limitations:  the government restrictions must be both "reasonable in light of the purpose served by the forum," and viewpoint neutral.  <u>Good News Club</u>, 533 U.S. at 106-07.  Finally, in a non-public forum the government may employ a "selective access" policy in which "individual non-ministerial judgments" govern forum participation, again subject to the same two limitations:  the policy must be reasonable and viewpoint neutral.  <u>Forbes</u>, 523 U.S. at 680; <u>see</u> <u>also</u> <u>Perry</u>,

460 U.S. at 46.   Thus, while the Constitution imposes more severe restrictions on government regulation of private speech in traditional and designated public fora than in limited public fora and non-public fora, even in the last two categories government restrictions must be reasonable and viewpoint neutral.

### Type of Forum Created

The primary test for determining the relevant forum is defined by "the access sought by the speaker." Cornelius, 473 U.S. at 801.  In the present case, Local 3190 seeks access to six forums: (i) County facility lunch and break rooms in order to distribute "informational flyers," the Break Room Forum (supra at 4, ¶10); (ii) employee bulletin boards, the Bulletin Board Forum (supra at 8-9, ¶¶20-22); (iii) the County's Intranet page, the Intranet Forum (supra at 9, ¶¶23-25); (iv) County employee paycheck envelopes and paychecks, the Paycheck Forum (supra at 10, ¶¶26-27); (v) County employee assigned mailboxes, the Mailbox Forum (supra at 10, ¶¶28-29); and (vi) the Employee Benefits Fair, the Benefits Fair Forum (supra at 10, ¶¶30-32).

### None of the Six Fora are Public Forums

In the present case, Local 3190 has presented no evidence that any of the six fora have "traditionally been available for public expression." ISKCON, 505 U.S. at 678.  Local 3190 appears to contend the fora at issue here are traditional public forums because many County buildings "have entry ways and common areas open to the public" and "are generally open to the public."   (Dkt. 2 at 9.)   This argument is not persuasive.

"The mere physical characteristics of the property cannot dictate forum analysis." United States v. Kokinda, 497 U.S. 720, 727 (1990) (holding, the sidewalk leading to the entry of the post office is not the traditional public forum open to expressive activity); see also Greer v. Spock, 424 U.S. 828, 835-37 (1976) (holding, even though a military base permitted free civilian access to certain unrestricted areas, the base was a non-public forum); Forbes, 523 U.S. at 678 ("reject[ing] the view that traditional public forum status extends beyond its historic confines").  Like the post office at issue in Kokinda, there is no evidence

1   that the County has ever expressly dedicated its facilities' entry ways or common access
2   areas to any type of expressive activity.  See Kokinda, 497 U.S. at 730. Moreover, "[t]he
3   government does not create a public forum by . . . permitting limited discourse, but only by
4   intentionally opening a nontraditional forum for public discourse."  Cornelius, 473 U.S. at
5   802; see also Perry, 460 U.S. at 47 ("[S]elective access does not transform government
6   property into a public forum").   Thus, none of the six fora are traditional public forums.

7   **None of the Six Fora are Designated Public Forums**

8        The difficult question is whether the County has established designated public fora,
9   limited public fora, or non-public fora.  As noted, a designated public forum exists where
10  the government "intentionally open[s] a nontraditional forum for public discourse."
11  Cornelius, 473 U.S. at 802.  In addressing this question, the Court must consider  (1) "the
12  policy and practice of the government to ascertain whether it intended to designate a place
13  not traditionally open to assembly and debate as a public forum" and (2) the nature of the
14  property at issue and its compatibility with expressive activity.  Id. at 802-04. The Court's
15  consideration of the nature of the property at issue depends upon whether "the principal
16  function of the property would be disrupted by expressive activity."  Id. at 804.   In
17  determining whether the County intended to create a designated or limited public forum with
18  respect to any of the six fora at issue here, the Court also considers the practice of the
19  government because there are situations where the government creates a designated pubic
20  forum by failing to enforce the restrictions it has placed on the use of the forum.  See Giebel,
21  244 F.3d at 1188; Hooper, 241 F.3d at 1075-77.  Limited public forum status may be lost
22  where policy restrictions, in practice, are not enforced, or "if exceptions are haphazardly
23  permitted."  Hopper, 241 F.3d at 1076.

24       None of the fora at issue here fit the description of a "designated public forum,"
25  because no evidence demonstrates that the County intended, by policy or practice, to make
26  any of the six fora generally accessible to all speakers or "public discourse."  See ISKCON,

27

28                                              - 16 -

1  505 U.S. at 678-79 (in a designated public forum, the government makes public property

2  generally accessible to all speakers); Hopper, 241 F.3d at 1074 ("public discourse").

3           **Three Fora are Limited Public Forums**

4           **Bulletin Board, Mailbox, and Paycheck Fora**

5           Under the Policies, "solicitation" includes posting, distribution of material, and

6  contact with employees. See Dkt. 8, Ex. 6 at A1502, E(1),(3)-(4). Local 3190 has presented

7  evidence that, pursuant to both the Solicitation and Posting Policies, the AZPOA has been

8  permitted access to the Mailbox Forum to distribute information, several third parties have

9  been permitted access to the Paycheck Forum to distribute information, and many third

10 parties have been permitted access to the Bulletin Board Forum to post notices. See Dkt.

11 8, ¶29 and Exs. 8, 10.  The County has not submitted any evidence to contradict Local

12 3190's evidence in this regard.  Thus, the Court will analyze these Fora and the Policies

13 together.

14         With respect to the Bulletin Board, Mailbox, and Paycheck Fora, the County's

15 Solicitation and Posting Policies clearly state that solicitation and posting are not permitted

16 unless they have been approved by the County Manager, the County Manager's Office, or

17 the facility/location manager.  See Dkt. 8, Ex. 6 at A1917, B; A1502, B, E.  In addition, to

18 receive approval for solicitation and distribution, material must be "an item of interest to

19 other employees"; to receive approval for posting, material must be a "general notice[] of

20 interest, value, or help to County employees" that is "appropriate" and will "benefit"

21 employees or citizens.  See id. at A1502, E; A1917, B,D(2).  Although not dispositive, the

22 Posting and Solicitation Policies, which limit the content of material that may be posted,

23 distributed, or used to solicit employees in work areas during work hours, demonstrate the

24 County's intent to create a limited public forum closed to subjects that are not "of interest,

25 value, or help" to County employees.  See Cornelius, 473 U.S. at 805 ("The decision of the

26 Government to limit access to the [forum] is not dispositive in itself; instead, it is relevant

27 for what it suggests about the Government's intent in creating the forum."); cf. Christ's

28

<u>Bride Ministries, Inc. v. Southeastern Pennsylvania Transp. Auth.</u>, 148 F.3d 242, 252 (3d Cir. 1998) (city's practice of permitting "virtually unlimited access" to forum and excluding "only a very narrow category of ads" created designated public forum).  By limiting access to County facilities in this manner, the County's Solicitation and Posting Policies do not render the County's Bulletin Board, Mailbox, and Paycheck Fora generally accessible to all speakers.  Moreover, Local 3190 has presented no evidence to show that County officials have not consistently enforced either Policy.  <u>See</u> <u>Children of the Rosary v. City of Phoenix</u>, 154 F.3d 972, 976 (1998) (no public forum when city "consistently restricted political and religious advertising" on buses).

The County's Bulletin Board, Mailbox, and Paycheck Fora are not designated public fora for the additional reason that the County "is acting as a proprietor, managing its internal operations, rather than acting as lawmaker with the power to regulate or license." <u>ISKCON</u>, 505 U.S. at 678; <u>Cornelius</u>, 473 U.S. at 804 (the court should determine whether "the principal function of the property would be disrupted by expressive activity").  As the Ninth Circuit has stated, "where the government acts in a proprietary capacity . . . to facilitate the conduct of its internal business, the Supreme Court generally has found a nonpublic forum, subject only to the requirements of reasonableness and viewpoint neutrality."  <u>DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.</u>, 196 F.3d 958, 966 (9th Cir. 1999).  Here, it cannot reasonably be disputed that the County maintains employee bulletin boards and mailboxes for the purpose of communicating with its employees.  Likewise, employee paychecks are obviously necessary for the County to facilitate and conduct its internal business.  Moreover, the County's written Policies demonstrate its intent to provide limited access to facilities and employees "during working hours, in working areas, and in all County buildings, facilities, and grounds" (<u>see</u> Dkt. 8, Ex. 6 at A1502, B).  <u>Cornelius</u>, 473 U.S. at 805-06 ("[T]he Government has the right to exercise control over access to the federal workplace in order to avoid interruptions to the performance of the duties of its employees.").  Indeed, the purpose of the Solicitation Policy – to "monitor and control the level and type of solicitation

that is directed toward county employees to reduce negative impacts and conflicts of interest" (Dkt. 8, Ex. 6 at A1502, A) – demonstrates that, although the Policies are compatible with limited types of expressive activity, none of the three Fora are intended to undermine the County's primary function as an employer.

The present case is similar to <u>DiLoreto</u>, where the Ninth Circuit held that a high school baseball fence opened for commercial advertising was not intended to designate a forum for unlimited expressive activity.  196 F.3d at 967.  The <u>DiLoreto</u> Court emphasized that, because the school district "excluded certain subjects from the advertising forum as sensitive or too controversial," the fence was a non-public forum open for a limited purpose. <u>Id.</u> at 966-67; <u>Hills v. Scottsdale Unified Sch. Dist.</u>, 329 F.3d 1044, 1049 (9th Cir. 2003) (because school district screened submissions for suitability and frequently rejected flyers for various reasons, "the District's policies and practices indicate a lack of intent to designate a forum for all expressive activity").  By restricting the Solicitation and Posting Policies to topics of "interest, value or help" to County employees, the Policies "indicate a lack of intent to designate a forum for all expressive activity."  <u>Hills</u>, 329 F.3d at 1049. Moreover, Local 3190 has presented no evidence that the County permits certain entities to engage in solicitation or posting without first obtaining permission under the Policies.  Thus, the County's Policies create a limited public forum, and will be permissible if they are viewpoint neutral and reasonable in light of the purpose served by the Fora.  <u>See</u> <u>Good News Club</u>, 533 U.S. at 106-07 (in a limited public forum, the government creates a channel for a specific or limited type of expression where one did not previously exist).

**Non-public Fora**

**Intranet Forum**

With respect to the County's Intranet Forum, Local 3190 has presented no evidence that the general public or unlimited third parties are provided access to County employees via the ESMA link.  Instead, Local 3190's evidence demonstrates that, if County employees choose to do so, they may access ESMA's web page from the County's Intranet site.  <u>Supra</u>

1
2
3
4
5
6
7

at 9, ¶¶24-25.  Although ESMA's web page displays information about discounts available to County employees, there is no evidence that ESMA's web page or the County's Intranet Forum provides links by which County employees can access other third parties' websites. Local 3190 has therefore failed to show that the purpose and structure of the County's Intranet Forum is to provide a forum of unlimited public expression or a forum for public discourse.  Rather, the evidence demonstrates that the County has provided a link by which County employees can access ESMA alone.

8
9
10
11
12
13
14

The closed structure of the Intranet Forum indicates the County's intent not to open it to the general public, but instead to ESMA alone.  Cornelius, 473 U.S. at 802-03 (government creates a designated public forum by intending to open the forum to public discourse).  Based on this "selective access" policy, the Court finds that the Intranet Forum is a non-public forum.  See Forbes, 523 U.S. at 680 (to create a non-public forum, the government must employ "selective access" policies, whereby forum participation is governed by "individual, non-ministerial judgments").

15

**Break Room Forum**

16
17
18
19
20
21
22
23
24
25
26
27

With respect to the Break Room Forum, the Solicitation Policy clearly provides that "[s]olicitors may not place material in employee lounges/break rooms, the cafeteria, or any work area."  Id., Ex. 6 at A1502, B.  Because solicitation in the Break Room Forum is prohibited, clearly the County did not intend to open those areas for expression by third parties.  See Desyllas v. Bernstine, 351 F.3d 934, 943 (9th Cir. 2003) ("areas that were not approved for posting flyers also are not designated public fora because the university did not intend to open them for expression, as manifested by the university's Bulletin Board Posting Policy"; "the campus areas not approved for handbill-posting are nonpublic fora").  Thus, the Break Room Forum to which Local 3190 requested access is a non-public forum.  Id. The County's Solicitation Policy, prohibiting solicitation in the Break Room Forum, is permissible if "'the limitation is reasonable and not based on the speaker's viewpoint.'"  See Desyllas, 351 F.3d at 943 (citation omitted).

28

**Insufficient Evidence to Categorize**

**Benefits Fair Forum**

Neither party has submitted sufficient evidence for the Court to definitively categorize the Benefits Fair Forum.  Although Local 3190 generally describes the forum, no evidence has been presented that the County maintains a written policy or a specific practice with respect to allowing third parties to participate in the Benefits Fair.  Local 3190 admits that the Benefits Fair is hosted by the County during normal working hours at various locations on County property, but also contends third party vendors are permitted to promote a variety of services and products, including dental, vision, health and life insurance.  (Dkt. 8, ¶30.)  It appears that the Benefits Fair Forum is a non-public forum open only to third parties with whom the County has contracted to provide health and other benefits to County employees.  Local 3190 readily admitted that it does not provide health or insurance, and merely advocates for increased benefit packages.  Because neither party has submitted  evidence of the County's policy or practice with respect to the admission of participants to the Benefits Fair, or a list of participants therein, the Court will not speculate on whether the Benefits Fair Forum is a designated or limited public forum or a non-public forum.  See Cornelius, 473 U.S. at 804 (government limited forum through consistent policy of restricting participation to appropriate agencies and requiring permission).

**Summary**

In sum, of the five fora that may be categorized here, the evidence shows that none of them are traditional public forums or designated public forums.  The five fora include three limited public fora and two non-public fora.  Thus, restrictions to access imposed by the County are permissible if they "are viewpoint neutral and reasonable in light of the purpose served by the forum."  Compare Hopper, 241 F.3d at 1074-75 ("In a limited public forum, restrictions that are viewpoint neutral and reasonable in light of the purpose served by the forum are permissible.") (citing Rosenberger v. Rector & Visitors of the Univ. of Virginia, 515 U.S. 819, 829 (1995)) With Desyllas, 351 F.3d at 943 ( "'[t]he government

1   may limit expressive activity in nonpublic fora if the limitation is reasonable and not based

2   on the speaker's viewpoint.'") (citation omitted).

3   ### Application of Limited Public Fora Analysis

4   Local 3190 contends it has demonstrated a reasonable probability of success on the

5   merits because Defendants have engaged in viewpoint discrimination.  (Dkt. 2 at 23-24.)

6   With respect to the Bulletin Board, Mailbox, and Employee Paycheck Fora, access to which

7   is governed by either the Solicitation or Posting Policy, the Court agrees that Defendants

8   have engaged in viewpoint discrimination by excluding Local 3190.  However, the Court

9   does not find that Defendants have engaged in viewpoint discrimination by excluding Local

10  3190 from the Intranet and Break Room Fora.

11  When the government establishes a limited public forum, it is not required to and

12  does not allow persons to engage in every type of speech.  Instead, the government may be

13  justified "in reserving [its forum] for certain groups or for the discussion of certain topics."

14  Rosenberger, 515 U.S. at 829; see also Lamb's Chapel, 508 U.S. at 392-393.   The

15  government's power to restrict speech, however, is not without limits.  The restriction must

16  not discriminate against speech on the basis of viewpoint, Rosenberger, 515 U.S. at 829, and

17  the restriction must be "reasonable in light of the purpose served by the forum," Cornelius,

18  473 U.S. at 806; Good News Club, 533 U.S. at 107.  For example, where a group seeks to

19  speak on a "subject otherwise permissible" in a particular forum, but from a religious

20  standpoint, the government cannot constitutionally exclude the speech.  See Lamb's Chapel,

21  508 U.S. at 394 (school permitting organizations to speak about child rearing and families

22  in after-school forum could not prohibit group presenting films on same topics from

23  religious standpoint); Good News Club, 533 U.S. at 108-09 (forum permitting any group

24  promoting the "moral and character development of children," could not restrict access to

25  Good News Club because they promoted same goals); Rosenberger, 515 U.S. at 831 ("By

26  the very terms of the SAF prohibition, the University does not exclude religion as a subject

27

28

1    matter but selects for disfavored treatment those student journalistic efforts with religious
2    editorial viewpoints").

3        In Lamb's Chapel, for example, the local New York school district issued rules and
4    regulations permitting "social, civic, or recreational uses" on school property when not in
5    use for school purposes, while prohibiting use by any group "for religious purposes." 508
6    U.S. at 387.  Citing this prohibition, the school district excluded a church that wanted to
7    present films teaching family values from a Christian perspective.  Id. at 387-89.  The
8    Supreme Court held that, because the films "no doubt dealt with a subject otherwise
9    permissible" under the rule, the teaching of family values, the district's exclusion of the
10   church was unconstitutional viewpoint discrimination.  Id. at 394.

11       Similarly, in Rosenberger, a student organization at the University of Virginia was
12   denied funding for printing expenses because its publication, Wide Awake, offered a
13   Christian viewpoint that "'challenge[d] Christians to live, in word and deed, according to
14   the faith they proclaim and . . . encourage[d] students to consider what a personal
15   relationship with Jesus Christ means.'"  515 U.S. at 822-26.  The University did not
16   "exclude religion as a subject matter" but "select[ed] for disfavored treatment those student
17   journalistic efforts with religious editorial viewpoints."  Id. at 831.  The Supreme Court
18   concluded simply that the university's denial of funding to print Wide Awake was viewpoint
19   discrimination, just as the school district's refusal to allow Lamb's Chapel to show its films
20   was viewpoint discrimination.  Id.

21   **Bulletin Board Forum**

22       In the present case, the County's Posting Policy provides that information may be
23   posted if it is "of interest, value, or help to County employees," so long as it is "appropriate"
24   and will "benefit" an "employee or citizen."  (Dkt. 8, Ex. 6 at A1917, B, D(2).)  Local 3190
25   presented undisputed evidence that, among others, the list of entities permitted to post
26   information includes United Pet Care, whose flyer promotes a healthcare plan for pets that
27   could  "interest," benefit and "help" County employees who own pets.  (Dkt. 8, Ex. 8.)

28                                        - 23 -

Local 3190 is an organization that, like United Pet Care, requested permission to post information promoting the benefits of membership in its labor organization, which could "interest," benefit and "help" certain County employees.   Notwithstanding Local 3190's request to post information on a permissible topic, however, the County refused Local 3190 access to the Bulletin Board Forum.  Defendants have presented no evidence demonstrating that Local 3190's information would not benefit, help, or interest County employees, nor did it submit evidence showing that such information was not appropriate.  Indeed, the County provided absolutely no evidence explaining why Local 3190 was denied access to any of the six fora at issue here.  Applying <u>Lamb's Chapel</u> and <u>Rosenberger</u>, the Court concludes that, because Local 3190 sought to post information on a subject otherwise permissible under the terms of the Posting Policy, Defendants' exclusion of Local 3190 from the Bulletin Board Forum was unconstitutional viewpoint discrimination.  See <u>Lamb's Chapel</u>, 508 U.S. at 394; <u>Rosenberger</u>, 515 U.S. at 831.

### Mailbox and Paycheck Fora

For the same reasons, the Court finds that Defendants unconstitutionally denied Local 3190 access to the County's Mailbox and Paycheck Fora.  The County's Solicitation Policy provides that if an "item of interest to other employees" is approved, the requestor "may distribute or post materials in specified locations or arrange meetings with County employees in accordance with the County Manager's or Director's instructions."  (Dkt. 8, Ex. 6 at A1502, E(4).)  Local 3190 presented evidence that the AZPOA was provided access to the Mailbox Forum to distribute its newsletter, flyers for a picnic, and membership applications, and "www.getawaytoday," a vacation company, was provided access to the Paycheck Forum to distribute flyers advertising vacations.  (<u>Id.</u>, Exs. 7, 10.)  As previously explained, Local 3190 is an organization that, like the AZPOA and www.getawaytoday, may "interest" certain County employees.  Moreover, Local 3190 is a labor organization that

1   appears to be indistinguishable from the AZPOA.[4]  Because Local 3190 sought access to the

2   Mailbox and Paycheck Fora to distribute information permitted under the terms of the

3   Solicitation Policy, and the County has not submitted any evidence demonstrating that

4   access to such fora was properly denied or that Local 3190's information did not satisfy the

5   terms of the Solicitation Policy, the Court has no alternative but to find that Defendants'

6   exclusion of Local 3190 from the Mailbox and Paycheck Fora was unconstitutional

7   viewpoint discrimination.  See Lamb's Chapel, 508 U.S. at 394.[5]

8          **Application of Non-Public Forum Analysis**

9          **Intranet Forum**

10          **Reasonableness**

11          In a non-public forum, restrictions on access "can be based on subject matter and

12   speaker identity so long as the distinctions drawn are reasonable in light of the purpose

13   served by the forum" and all the surrounding circumstances.  Cornelius, 473 U.S. at 806;

14   see also Perry, 460 U.S. at 49 ("access policy [in non-public forum] based on the status of

15   the respective unions rather than their views" was constitutional).  The "reasonableness"

16   analysis thus focuses on whether differential access is consistent with preserving the

17   property for the purpose to which it is dedicated.  See Perry, 460 U.S. at 50-51.  In Perry,

18   for example, the Supreme Court held that denying access to the school's internal mail

19   system to unions other than the school's official bargaining unit was reasonable given the

20

21          _____

22          [4]  At argument, counsel for Defendants asserted that the AZPOA is distinguishable from
     Local 3190 because probation officers are *state employees* and received permission to access
23   the Mailbox Forum *from the State*.  Regardless of whether probation officers are state
     employees, Defendants presented no evidence in opposition to Local 3190's application for a
24   preliminary injunction.  Thus, there is no basis in the record for the Court to find that the State
     granted the AZPOA access to the County's Mailbox Forum.

25          [5]  Because the Court finds that exclusion of Local 3190 from the Bulletin Board,
26   Mailbox and Paycheck Fora was unconstitutional viewpoint discrimination, it will not address
     whether the restrictions in the Policies are reasonable.  See Good News Club, 533 U.S. at 107
27   n.2.

28                                          - 25 -

1   school's purpose to use the mail system for communication of school business, and to
2   prevent the system from becoming a battlefield for competing unions.  Id. at 51-52.  In
3   Lehman v. City of Shaker Heights, 418 U.S. 298 (1974), the Supreme Court held that the
4   city's decision to exclude political advertising from bus signs was reasonable given the
5   city's desire to generate revenue and the potential for "lurking doubts about [political]
6   favoritism, and sticky administrative problems . . . in parceling out limited space to eager
7   politicians."  Lehman, 418 U.S. at 304 (plurality opinion); see also Children of the Rosary
8   v. City of Phoenix, 154 F.3d 972, 976 (9th Cir. 1998) ("[A] review of the city's standards
9   and practices indicates that the city has not opened a public forum [for ads on its bus
10  panels]. The city has consistently restricted political and religious advertising").   In
11  Kokinda, the Supreme Court held that prohibiting solicitation on postal property was
12  reasonable because the purpose of the forum (a sidewalk from the parking lot to the post
13  office) was to accomplish the most efficient postal delivery system.    497 U.S. at 727
14  (plurality opinion).  Accordingly, the special nature and function of County facilities are
15  relevant to evaluating the limits the County has imposed on expressive activity via the two
16  non-public fora at issue here.  Cornelius, 473 U.S. at 802 (although the forum was the
17  charitable drive itself, Court could consider the special nature and function of federal
18  workplace in evaluating access limits).

19      The Court concludes that the differential access provided to ESMA and Local 3190
20  with respect to the County's Intranet Forum is reasonable because it is consistent with the
21  County's "legitimate interest in 'preserv[ing] the property . . . for the use to which it is
22  lawfully dedicated.'"  Perry, 460 U.S. at 50-51 (citation omitted).  Providing an Intranet link
23  to ESMA's web page effectively allows "the County" to communicate with its employees
24  about discounts and other benefits provided to County employees.  Likewise, the ESMA
25  link enables ESMA to fulfill its obligation to provide benefits to County employees.  Id.
26  Although membership in Local 3190 is available "to any non-supervisory employee of
27  Maricopa County," the *option to join Local 3190* differs substantially from the benefits

28

ESMA is required to provide to County employees.  (Dkt. 6, ¶6.)  In contrast to the benefits provided by ESMA, County employees can only become members of Local 3190 "by completing and signing a Membership Application and Payroll Deduction Authorization Card."  (Id., ¶7.)  Because ESMA is officially responsible for providing benefits to County employees, and Local 3190 does not occupy a similar position in the County's employment structure, denying Local 3190 access to the County's Intranet Forum is reasonable.  See Perry, 460 U.S. at 51-52 (denying access to school's internal mail system to unions other than the school's official bargaining unit was reasonable given the school's purpose to use the mail system for communication of school business); ISKCON, 505 U.S. at 689 (in examining the compatibility between the prohibited speech and the particular forum, the court looks to whether the restrictions on speech are reasonably related to maintaining the environment that the government has deliberately created).

### Viewpoint

Nothing in the record indicates that Defendants refused to permit Local 3190 access to the County's Intranet Forum in order to discourage one viewpoint and encourage another. Rather, based on ESMA's official position in the operational structure of the County system, the Court finds that ESMA "obtained a status that carried with it rights and obligations that no other . . . organization [, including Local 3190,] could share."  Perry, 460 U.S. at 49 n.9. No evidence has been presented that Local 3190 occupies a similar official position in the structure of the County, nor that any organization other than ESMA has a webpage link on the County's Intranet Forum.  By providing a web page link in its Intranet Forum to the entity that is responsible for providing a service to its employees, the Court finds that the County's Intranet access policy is based solely on the speaker's identity.  See Perry, 460 U.S. at 49 ("Implicit in the concept of the nonpublic forum is the right to make distinctions in access on the basis of subject matter and speaker identity.  These distinctions may be impermissible in a public forum but are inherent and inescapable in the process of limiting a nonpublic forum to activities compatible with the intended purpose of the property.");

DiLoreto, 196 F.3d at 969 (no viewpoint discrimination where class of speakers is categorically excluded from limited public forum regardless of stand speaker takes on topic). Thus, the Court finds that Defendants did not engage in viewpoint discrimination by excluding Local 3190 from the Intranet Forum.

**Break Room Forum**

**Reasonable**

The Court finds that Defendants' rejection of Local 3190's request to engage in solicitation in the County's Break Room Forum is "reasonable in light of the purpose served by the forum," because the Solicitation Policy is aimed at reducing negative impacts and conflicts. See Dkt. 8, Ex. 6 at A1502, (A). An additional purpose of the Solicitation Policy is to "monitor and control the level and type of solicitation that is directed toward County employees." (Id.) The ususal purpose of employee break rooms, lounges, and lunch rooms is to allow employees to relax and refresh in a neutral environment. Thus, the Court finds that denying access to the Break Room Forum to Local 3190 is consistent with the County's purposes of controlling the level and type of solicitation permitted and reducing negative impacts and conflicts that could arise from solicitation efforts in a neutral environment. See Desyllas, 351 F.3d at 944 (removing flyers from columns was reasonable because it was consistent with university's purpose to preserve the appearance of campus structures).

**Viewpoint**

No evidence has been presented to show that Defendants have permitted any entity access to the Break Room Forum for the purpose of solicitation, nor that they have not consistently denied access to all entities and individuals who seek access to such forum in order to distribute information. (Dkt. 8, Ex. 10.) Moreover, there is no indication in the record that the County rejected Local 3190's request to access the Break Room Forum in order to suppress Local 3190's views. Thus, the Court finds that Defendants did not engage in viewpoint discrimination by denying Local 3190 access to the Break Room Forum.

1

### Conclusion on First Amendment

2
3
4
5
6
7
8
9

Based on the analysis above, the Court finds that Defendants unconstitutionally refused to permit Local 3190 access to the County's Bulletin Board, Mailbox, and Paycheck Fora because the refusal was motivated by a desire to stifle Local 3190's particular perspective and viewpoint. Thus, Local 3190 has demonstrated a substantial likelihood of success on the merits of its First Amendment claim with respect to the County's Bulletin Board, Mailbox, and Paycheck Fora. The Court further concludes that Local 3190 has not demonstrated a substantial likelihood of success on the merits of its First Amendment claim with respect to the County's Intranet, Break Room, and Benefits Fair Fora.

10

### 2.    Equal Protection

11
12
13
14

Local 3190 alleges that differential access provided to third parties constitutes impermissible content discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. With respect to the Break Room Forum, Local 3190 has not presented any evidence to show that the County provides access to other third parties.

15
16
17
18
19
20
21
22
23

With respect to the Intranet Forum, the Court has rejected this assertion when cast as a First Amendment claim, and it fares no better under the guise of an Equal Protection claim. As explained above, Local 3190 did not have a First Amendment or other right of access to the County's Intranet Forum. Supra at 19-20. ESMA's access to the Intranet Forum, therefore, does not burden a fundamental right of Local 3190. As a result, Defendants' decision to grant access to ESMA is not tested by the strict scrutiny applied when government action impinges upon a fundamental right protected by the Constitution. See San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 17 (1973). Defendants' policy denying access to Local 3190 need only rationally further a legitimate state purpose. That

24
25
26
27
28

purpose is clearly demonstrated by the special responsibility and official position ESMA occupies in the County's structure as an employer.  See supra at 19-20.[6]

Similarly, because Local 3190 has not provided sufficient evidence to show that it had a First Amendment or other right of access to the County's Benefits Fair Forum, Defendants' denial of access to Local 3190 need only rationally further a legitimate state purpose.  From the evidence submitted by Local 3190, it appears that the County furthers a legitimate state purpose by admitting only third parties with whom the County has contracted to provide health and other benefits to County employees.  See supra at 21.

For these reasons, the Court concludes that Local 3190 has not demonstrated a substantial likelihood of success on the merits of its Equal Protection claim with respect to the County's Intranet, Break Room, and Benefits Fair Fora.

**D.    Irreparable Injury**

It is well-settled that a party seeking the deprivation of liberties protected by the First Amendment constitute irreparable injury.   See Elrod v. Burns, 427 U.S. 347, 373 (1976) (plurality); Foti v. City of Menlo Park, 146 F.3d 629, 643 (9th Cir. 1998) ("[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.") (quoting Elrod, 427 U.S. at 373).

In the present case, Local 3190 has established the existence of irreparable injury supporting the entry of injunctive relief with respect to the County's Bulletin Board, Mailbox, and Paycheck Fora, each of which is governed by the terms of the Solicitation and Posting Policies.  Thus, Local 3190 will suffer irreparable harm if injunctive relief is denied with respect to these three fora alone.

Relying on the Supreme Court's decision in Perry, Defendants primarily contend Local 3190 will not suffer irreparable harm because, as a matter of law under Perry, success

---

[6]Because the Court has already concluded that the restrictions in the Bulletin Board, Mailbox, and Paycheck Fora are unconstitutional in violation of the First Amendment, it will not address Local 3190's Equal Protection claims with regard to such Fora.

on the merits is unlikely.  <u>See</u> Dkt. 20 at 11-13 (arguing that, as a matter of law, "employee mail boxes, the intranet, the Employee Benefits Fair, and paycheck envelopes are not designated public fora").  The Court rejects Defendants' argument that <u>Perry</u> prevents access to the six fora at issue here *as a matter of law* because the County, like the school district at issue in <u>Perry</u>, is a government employer.  As shown above, in "determining when the government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes," <u>Cornelius</u>, 473 U.S. at 800, the Court "must examine the terms on which the forum operates," including fact-specific terms, such as government intent, and the policy and practice of the government. <u>Hooper</u>, 241 F.3d at 1075.  Moreover, the Court has already found that Local 3190 is likely to succeed on the merits of its claim with regard to the Bulletin Board, Mailbox, and Paycheck Fora.  Thus, Defendants' argument is moot.

Defendants also contend a preliminary injunction is not appropriate because other avenues of communication are available to Local 3190 while the present litigation is pending.  However, "'one is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place.'"  <u>Reno v. ACLU</u>, 521 U.S. 844, 889 (1997) (citation omitted).

**E.    Bond Requirement**

Federal Rule of Civil Procedure 65(c) provides that "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained . . . ."  Fed.R.Civ.P. 65(c).  "[T]he purpose of such a bond is to cover any costs or damages suffered by the government, arising from a wrongful injunction . . . ."  <u>Gorbach v. Reno</u>, 219 F.3d 1087, 1092 (9th Cir. 2000).  Although a preliminary injunction will not be issued without security by the applicant under Federal Rule of Civil Procedure 65(c), a district court has wide discretion in setting the amount of a bond, and the bond amount may

be zero if there is no evidence the party will suffer damages from the injunction.  See Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills, 321 F.3d 878, 882 (9th Cir. 2003) (stating "[a] judge could dispense with the bond requirement when no request for a bond was ever made in district court"); see also Gorbach, 219 F.3d at 1092.

In the present case, Defendants have not requested a bond, nor have they submitted any evidence regarding their likely damages.  The Court further finds that the preliminary injunction ordered here will not likely result in any damages to Defendants.  Thus, the Court will waive the bond requirement.  See Connecticut Gen. Life Ins. Co., 321 F.3d at 882; Gorbach, 219 F.3d at 1092.

**CONCLUSION**

The Court concludes that Local 3190 is likely to succeed on its claim that Defendants' denial of access to the County's Bulletin Board, Mailbox, and Paycheck Fora violates the Free Speech Clause of the First Amendment because the 1991 Solicitation and Posting Policies, as applied to Local 3190, are unconstitutional.  The Court further concludes that Local 3190 will suffer irreparable harm if injunctive relief is denied with respect to the County's Bulletin Board, Mailbox, and Paycheck Fora, access to which is provided under the Solicitation and Posting Policies.  Accordingly,

**IT IS HEREBY ORDERED GRANTING** Local 3190's Application for a Preliminary Injunction as outlined below.  (Dkt. 2.)

**IT IS FURTHER ORDERED DISMISSING** Counts I, II, and V of Local 3190's Complaint with prejudice.

**IT IS FURTHER ORDERED DISMISSING** Defendants Maricopa County Board of Supervisors, Fulton Brock, Don Stapley, Andrew Kunasek, and Max W. Wilson from Local 3190's Complaint with prejudice.

**IT IS FURTHER ORDERED** that Defendants Maricopa County and David Smith, as well as each of their officers, representatives, agents, servants, employees, attorneys, and all persons acting in concert or participation with such Defendants, are hereby enjoined and

restrained, pending the final disposition of the matters involved herein, from barring or preventing Local 3190 from utilizing the Bulletin Board, Mailbox, and Paycheck fora, pursuant to the terms of the Solicitation and Posting Policies. See supra at 17-19. **Because Local 3190 failed to produce evidence that its exclusion from the Benefits Fair, Intranet, and Break Room Fora is unconstitutional, this restraining order does not apply to the Benefits Fair, Intranet, and Break Room Fora.**

**IT IS FURTHER ORDERED** that no bond requirement will be imposed pursuant to Federal Rule of Civil Procedure 65(c). Supra at 31-32.

DATED this 13th day of March, 2007.

Stephen M. McNamee
United States District Judge